NATHANIEL, HOYT AND JAMES BLANDIN, ADMINISTRATORS, &c., AND THE SAID JAMES BLANDIN, WILLIAM M. HUDSON, AND JOSEPHINE, HIS WIFE, HEIRS OF ANTOINE BLANDIN, DECEASED, AND ELISHA M. PEASE, APPELLANTS, *v.* GEORGE S. HAMMEKIN, AND ADELAIDE MATILDA, HIS WIFE.

W    e a title to land in the State of Coahuila and Texas was obtained in 1833, by a
mother for, and in the name of her daughter, and, in 1836, the father of the daughter
conveyed it away by a deed executed in Louisiana, this deed was properly set aside
by the District Court of Texas.
It was not executed either according to the laws of Louisiana, or those of Coahuila
and Texas.

*Mr. Justice Curtis* was necessarily absent when this case was considered and decided.

This was an appeal from the District Court of the United States for the District of Texas.

The facts are stated in the opinion of the court.

It was argued by *Mr. Allen*, for the appellant, with whom was *Mr. Hale*, and by *Mr. Hughes*, for the appellee.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in Chancery, from the District Court of the United States for the District of Texas.

The bill alleges, that the States of Coahuila and Texas, on the 23d of November, 1833, granted eleven leagues of land, on the River Navasota, in the department of Nacogdoches, and of the value of fifty thousand dollars, to Adelaide Matilda Mexia; that on the 10th of February, 1836, her father, Antonio Mexia, upon some supposed necessity of having the legal title vested in a citizen of said State, and without consideration, sold and conveyed the land to John A. Merle, by authentic act before a notary public of Louisiana, and not according to any law in Texas, or in the State of Coahuila and Texas; and that the said Merle, by a like authentic act, declared that the said land was purchased by him with the funds of Antonio Blandin; that the said Antonio died intestate; that Nathaniel Hoyt and James Blandin have been appointed administrators of his succession, and that Josephine Hudson and James Blandin are his heirs at law; that the said Adelaide Matilda owns the same in her own right, but that the administrators and heirs of Blandin claim the same by descent.

An amended bill represents, that Antonio Blandin, ancestor of defendants, before his death, in order to carry out the trust created by the sale to him, and to prevent the land from being subject to his debts, and that the title might be vested in a resident of Texas, he expecting to be absent, without consideration or consent of complainants, conveyed all his right and interest in the land to Elisha M. Pease; that by reason of this convey-ance, the land did not descend to the heirs of Blandin, but the title remains in Pease, who holds the same for the benefit of the complainants; that he does not claim title for his own benefit, but for the benefit of those for whom the trust was created. And the complainants pray that Pease may be made a party; and that the sale by Antonio Mexia be declared void, or that the heirs of Blandin may be held trustees, &c., and compelled to convey, &c.

The heirs of Blandin plead in bar to so much of the bill as alleges the grant of the land to the said Adelaide Matilda, and a subsisting title in her, and seeks special or general relief. They allege that, in pursuance of a petition, bearing date the 27th of

January, 1830, presented to the Governor of the State of Coahuila and Texas, by, and in behalf of one Pedro Varela, a grant by way of sale, in conformity with the 24th article of the colonization law of the 24th of March, 1825, was made to him, by the said Governor, of eleven leagues of land in the vacant lands of said State.   That on the 29th of March, 1832, said Varela, by notarial act, in the city of Mexico, sold and transferred said land to one Charlotte Walker, wife of said Mexia, for the use of their daughter, the said Adelaide Matilda, then a minor, unmarried, and subject to the power of her father; in order that she might enjoy or alienate said land, as absolute proprietress of the same; that by said act she became bound to pay to the government of said State, the value of the land, according to the colonization law ; that the sale and transfer were founded upon a valuable consideration in money, paid by Mexia to Varela ; that said act was executed by Charlotte, wife of Mexia, acting for her husband, and in his absence, by virtue of the power granted to her, according to the laws of Mexico, by Alexander Alvarez Guitian, second constitutional Alcade of the City of Mexico, on the 10th of March, 1832 ; and that Mexia thereby became entitled to all the benefits of said act, and was bound by the same.

That on the 23d of November, 1833, a survey having first been made, a title of possession of the land was made by the Commissioner, Vincente Aldreto, to said Adelaide Matilda ; and that, on the 10th of February, 1836, said Adelaide Matilda remaining unmarried, and subject to Mexia, her father, he, by a notarial act, at the city of New Orleans, granted, sold, and transferred the land, with the consent and authorization of his said wife, to said John A. Merle, then acting as trustee for Antonio Blandin, for the consideration of $7,306.25 then paid to said Mexia by Merle, out of the funds of Blandin, in his possession.   Other parts of the bill were denied in the plea.

The answer of Pease, admits, that some time in 1838, Antonio Blandin called upon him and stated, that he held the title to three eleven league grants in Texas, one, as he believes, the grant in controversy ; that said land had been conveyed to him by the owners, in order that he, as a resident of Texas, might hold the same for their benefit, &c.

The other defendants admit the conveyances alleged in the bill, but do not admit the trust in their ancestor, and they allege as a reason for his conveyance to Pease, that he was embarrassed, and was apprehensive his creditors would subject the land to the payment of his debts.   The land, they assert, was conveyed in trust to Pease, for the benefit of the wife and children of Blandin.

A demurrer was filed to the amended bill, which was properly

overruled by the District Court.   The case must be examined here on its merits.

The purchase from Varela was made by Mrs. Mexia, for the benefit of her daughter Adelaide Matilda.   It was a concession to be located upon the unappropriated lands of the State.   After the location and survey were made, the title of possession issued to Adelaide Matilda.

The 59th law of Toro provides, when the husband shall be absent, and no present prospect of his return, or where there be danger by reason of delay, the Justice, with a knowledge of the cause, being legitimate, or necessary, or profitable to the wife, may give the license to the wife, which the husband might give, which thus given, shall be as good as if given by the husband. 3 Novisima Recop. 404.   A license thus given by the Judge, in consequence of the absence of the husband, does not authorize the wife to bind the husband, nor does it appear that she pretended to do so, in the purchase from Varela.   From the conveyance, it sufficiently appears that this property did not become a part of the community property of husband and wife.

The conveyance of the land by Mexia to Merle, as trustee for Blandin, for the consideration of $7,306.25 expressed, does not contain the necessary formula for a transfer of title, under the laws of Louisiana.   But those laws do not govern the right of Mexia to make the conveyance, or to make it in the form in which it was executed.

To show that this act was done by Mexia, with the consent of his wife, a letter of hers is appended to the transaction, and a part of it embodied in the conveyance.   This letter bears date of November 1st, 1836, while the authentic act in which it is incorporated, is dated the 10th of February, 1836.   It is not readily perceived how a letter, dated ten months after the conveyance, could constitute a part of it.   From the instrument, it appears that Merle was a purchaser for himself, his heirs and assigns, when it is admitted that he purchased as the trustee of Blandin, and with his money.

But the facts in the case show that no money was paid on the purchase.   The Hon. P. Soulé says, the sale was made by General Mexia to John A. Merle, without consideration, and for the sole purpose of protecting the property of his children, understanding that Texian citizens only could hold lands in Texas. The witness was well acquainted with Antonio Blandin, who consulted with the witness, and stated the land was confided to his care, never speaking of it as his private property, or as having paid any consideration for it.   Blandin uniformly spoke of the land as a trustee, and not as owner.

The deposition of E. M. Pease, one of the defendants, was taken

by the complainants, but it was objected to by the defendants below, on the ground that Pease was a party, and that the Commissioner of the United States who had taken the same, did not appear to have been sworn. The District Court refused to admit the deposition on both grounds. As the deposition was not taken with the leave of the court, it was properly overruled, on the ground that the witness was a party, but the other ground in regard to the Commissioner not appearing to have been sworn, was not sustainable. The Commissioner is an officer appointed by the courts of the United States, and his official acts are *primâ facie* valid.

Had General Mexia power to make a conveyance to Merle? Was it executed according to the laws of Louisiana, where the act was done, or the laws of Texas, where the land is situated, and which must govern the act? The laws of Louisiana do not authorize the transfer of a child's property by parents or guardians, without an order from the Judge, granted on the advice of a family meeting. 1 Civil Code, Art. 334, 338. No such ceremony was observed in the conveyance to Merle, as the law requires, and consequently the act was not operative by the Louisiana law. The letter of the wife, if it were genuine and bore the proper date, is not evidence of a family meeting, and that the sale was " of absolute necessity, or of evident advantage to the minor."

It is contended that the property in question came to Adelaide Matilda, through the means of her father, and, consequently, that he had the power to convey it. Such property under the civil law is called profectitious.

There is no evidence that the father paid any consideration for this property. It was purchased by the mother for the benefit of her daughter; and when the concession was located and arranged, the perfect title was made in the name of the daughter. The presumption that the consideration paid was paid by the mother, arises from the facts. Her marital rights under the civil law, as to property, were independent of her husband; and in this view it may well be presumed that she paid the consideration for the purchase.

The fact that no money was paid by Merle, although a large sum was inserted in the act of conveyance, shows the nature of that transaction; and that the step was taken, as sworn to by Mr. Soulé, to preserve the land by a legal ownership, for the benefit of his daughter.

The mother having procured the complete title to the property in the name of her daughter, she had no power to consent to or authorize the transfer of it by her husband. The pretence of the letter gives no validity to the act of conveyance. The transfer of the concession to the mother, by Varela, for her daughter,

·was not made as a part of the marital community. The conveyance to the mother and the declared object of it, negatives such a presumption.

Acquired as the property was, the law denominates it adventitious. It came to their daughter through her mother. In this ·view, it is contended that the *usufruct* was in the father, "who is bound to defend and preserve it, both in court and out;" 3 Las Siate Partidas, 149, and that he had power to convey it.

From the terms of conveyance, it is clear that Mexia assumed to act, not in his own right, but in the character of father and ·natural tutor, and by authorization of his wife. The instrument purports to convey the title of his daughter, which admitted the right to be in her. The letter of the wife, as he supposed, was evidence of a family meeting required by law, and under which he assumed to act.

A guardian cannot dispose of the property of his ward without the permission of the judge of his domicil. 1 White's Recop. 15 and 16, Part 4, L. 14, tit. 11, p. 4. During the minority of the child, the only right of the father is, to take the *usufruct*. He has no power to sell the property of the minor, except for certain purposes, and under the sanction of the Judge. 2 Part. 1137. The conveyance to Merle was not made as the law requires, and it was therefore void. It was not valid under the laws of Louisiana, nor under the laws of Texas and Coahuila.

The decree of the District Court is affirmed.

dm

Mr. Justice NELSON concurred in the result to which the above opinion arrived.

### Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Texas, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby, affirmed, with costs.